IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTOPHER B.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

    Defendant.

Case No. 6:23-cv-00385-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

Plaintiff Christopher B. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Title II Disability Insurance Benefits and Title XVI Social Security Income under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for additional proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page | 1 – OPINION AND ORDER

## PROCEDURAL HISTORY

Born in 1974, plaintiff alleges disability beginning October 31, 2020, due to artery damage to his left arm, dissection of left subclavian artery, and being born with an extra rib above his first rib. Tr. 99-100. His application was denied initially and upon reconsideration. Tr. 99-114, 116-32. On February 3, 2022, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 70-98. On March 22, 2022, the ALJ issued a decision finding plaintiff not disabled. Tr. 51-61. After the Appeals Council denied a request for review, plaintiff filed a complaint in this Court. Tr. 1-7.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 53. At step two, the ALJ determined the following impairment was medically determinable and severe: peripheral arterial disease in the left upper extremity." *Id*. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 55.

Because plaintiff failed to establish a presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except:

> "[H]e is able to lift and carry no more than 10 pounds with the left, non-dominant upper extremity. He can occasionally push and pull with the left, non-dominant upper extremity. He can frequently climb ramps and stairs but never climb ladders, ropes, or scaffolds. He can occasionally reach overhead, handle and finger with the left, non-dominant upper extremity. He can tolerate occasional exposure to workplace hazards such as unprotected heights and exposed, moving machinery."

Tr. 56.

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 59-60. At step five, the ALJ concluded, based on the VE's testimony, there existed a significant number of jobs in the national economy plaintiff could perform despite his impairments, such as laundry worker/folder, hand packager, and office helper. Tr. 61.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) discrediting his subjective symptom testimony; and (2) rejecting the medical opinion of Craig Seidman, M.D. Pl.'s Opening Br. 4, ECF 14.

### I. Plaintiff's Testimony

Plaintiff contends the ALJ erred by discrediting his testimony concerning the extent of his impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2016 WL

1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified he was unable to work due to issues with his left arm and hand, including weakness, tingling, numbness, and instances of sharp, severe pain. Tr. 82-83. Due to the weakness and numbness in his left arm and hand, he generally carries groceries using only his right hand, has difficulty lifting and holding things with his left hand, and avoids driving with his left hand for extended periods. Tr. 82, 84-85. He further testified that he experiences bouts of dizziness more than ten times per day that last up to a few minutes. Tr. 85-86. He also testified that he is unable to type with his left hand, he finds using his phone with his left hand difficult, and that he experiences pain and cramping in his hand, palm, and knuckles. Tr. 87. He has not undergone physical therapy to address these issues. *Id*. When asked about his anxiety, plaintiff testified he has received no treatment, and that he self-treated by "working outdoors". Tr. 89. In terms of daily activities, plaintiff testified he "does not do much other than watching television and YouTube". Tr. 88. His function report provides a bit more clarity, indicating that he walks daily, that he can walk for up to 15 minutes before needing to rest for five minutes, that he no longer plays disc golf because it causes pain in his left upper extremity, and that he has not played disc golf since his first surgery. Tr. 340, 377-78. He also noted that he hangs his clothes because they are hard to fold, that he takes breaks when hanging, and that his partner helps him bathe and trim his beard. Tr. 374-75. He further indicated that he does not finish what he starts, such as the laundry, dishes, and fixing things. Tr. 378.

After summarizing the hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but

his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 57. Regarding plaintiff's physical impairments, the ALJ cited to inconsistences in plaintiff's medical records and his daily activities. Tr. 57-58.

In discounting plaintiff's impairments, the ALJ cited evidence from October and November 2020, showing plaintiff underwent left brachial to interosseous artery bypass with reverse cephalic vein graft and a thrombectomy of brachial and forearm arteries following complaints of pain, tingling, and weakness in his left upper extremity. Tr. 57 (citing Tr. 423, 436, 729-39). In December, plaintiff underwent another surgery for resection of the first and cervical rib due to left thoracic outlet syndrome, resulting in improved hand function and controlled pain. Tr. 57 (citing Tr. 485, 903). The ALJ noted that plaintiff presented to a post-operative evaluation with complaints of ongoing pain, improved numbness and tingling, and positive examinations for diminished grip strength and range of motion, however the ALJ failed to cite to this evidence. The ALJ notes that in March 2021, plaintiff presented at another post-operative follow-up with complaints of soreness and lack of feeling in his fingertips making it difficult to grab things, but that examination showed his grip strength was good bilaterally and his pulses were easily palpable. Tr. 57 (citing Tr. 922-23). The ALJ further noted that at an evaluation in May, plaintiff continued complaining of pain and numbness but was able to bake cookies and cakes with his wife on a regular basis, and exams showed no deficits in his upper extremity strength of range of motion. Tr. 57. However, the ALJ cited to no evidence in the record regarding these claims. Lastly, the ALJ cited evidence from September and November showing plaintiff continued complaining of tingling, numbness, and pain with exams showing diminished grip strength but that he was clinically and sonographically stable. Tr. 58 (citing Tr. 1060, 1074-86).

Plaintiff argues that the ALJ cherry picked records and that the ALJ's purported reasoning was not specific, clear, and convincing. Pl.'s Opening Br. 9-14, ECF 14. Plaintiff cites records showing he continued complaining of pain, numbness, and tingling following his surgeries despite some reports of improvement. Pl.'s Opening Br. 11-12, ECF 14 (citing Tr. 8, 10, 17, 43, 46,1063, 1065). The Court agrees with plaintiff.

The ALJ cites records of plaintiff's improvement following surgery but does not provide the requisite reasoning, such as how much plaintiff improved or how that improvement contradicted plaintiff's claims. According to the evidence in the record, plaintiff may have had improved grip strength and pain, but the ALJ failed to address plaintiff's complaints of numbness and tingling. Further, any pain relief was transient in nature. The ALJ also attempted to rely on plaintiff's daily activities, noting that he could drive, play disc golf, hang clothes, and prepare meals, but ignored plaintiff's report of no disc golf since his surgery, he does not use his left hand to drive and often has his girlfriend drive him, he hangs his clothes because he cannot use his left hand to fold them, and he has difficulty maintaining his personal hygiene. Tr. 59, 82, 84-85, 340, 374-75, 377-78.

Because the ALJ failed to tie the cited evidence back to plaintiff's claims, the ALJ has failed to provide specific, clear, and convincing reasons to reject the plaintiff's testimony.

**II.     Medical Opinion Evidence**

Plaintiff asserts the ALJ improperly discredited the opinion of Craig Seidman, M.D.

Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the

'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are."[2] *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

When determining how persuasive a medical opinion is, supportability and consistency are the most important factors to consider. 20 C.F.R. § 416.920c(b)(2). These two factors each have a different focus. For consistency, the ALJ considers how consistent a medical opinion is with the other evidence in the record *Id.* § 416.920c(c)(2). For supportability, the ALJ considers the relevancy of the objective medical evidence and supporting explanations presented by the medical source to justify their own opinion. *Id.* § 416.920c(c)(1).

Dr. Craig Seidman, M.D., provided a medical opinion on January 12, 2022. Tr. 1261. He noted he had been treating plaintiff for one year and that he saw plaintiff every six months for post-operative follow-up care due to the ischemia in his left arm. Tr. 1257. Dr. Seidman opined that plaintiff would not need to lie down or rest periodically throughout the day, and that his left arm had limited endurance and strength. Tr. 1258-59. Dr. Seidman further indicated that plaintiff would need unscheduled breaks during an eight-hour day but could not specify either the number or duration of the breaks. Tr. 1259. Dr. Seidman also could not provide functional limitations for

---

[2] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The new regulations nonetheless "displace our longstanding case law requiring an ALJ to provide" different levels of reasoning (i.e., "clear and convincing" or "specific and legitimate") based on a hierarchy of medical sources. *Id.* at 787.

Page | 7 – OPINION AND ORDER

plaintiff's ability to lift, carry, push, and pull, nor how often plaintiff could use his hands, fingers, and arms during an eight-hour workday. Tr. 1259-60. Dr. Seidman noted only that plaintiff likely has limitations in repetitive reaching, handling, or fingering, that he would likely need breaks after doing so, that he would not need to elevate his legs, and could not state whether plaintiff would need to miss work as a result of his impairments. Tr. 1260. The ALJ found that Dr. Seidman's opinion was unpersuasive because it did not address specific work-related limitations. Tr. 58.

Dr. Seidman's opinion contains no information regarding what plaintiff "can still do despite [his] impairments," including only vague language such as "likely" rather than concrete limitations. Tr. 1259-60; *see* 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(1); *see also see also* Ford v. Saul, 950 F.3d 1141, 1156 (9th Cir. 2020) (noting that equivocal language is inadequate in determining specific limitations). According to the regulations, Dr. Seidman's opinion did not qualify as a medical opinion and, as such, the ALJ was under no obligation to evaluate it as such. Therefore, the ALJ did not err in rejecting Dr. Seidman's opinion.

### III. Remand for Further Proceedings

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011); see also

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful legal error by failing to identify specific, clear, and convincing reasons for discounting plaintiff's subjective symptom testimony. Further proceedings would be useful in determining whether the rejection of plaintiff's testimony is supported by substantial evidence and allow the ALJ to resolve any necessary changes to the plaintiff's resulting RFC.

In light of the lack of reasoning in disregarding plaintiff's testimony, and lack of medical opinions that could provide clarity, the appropriate remedy is to remand to the Commissioner for further proceedings to provide proper reasoning as well as provide plaintiff with a consultative exam in order to resolve any ambiguities surrounding his physical capabilities. The Commissioner shall also take any further action, as necessary, and issue a new decision.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 20th day of November, 2024.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge